**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

LAWRENCE S. BONNER,

          Plaintiff,

vs.

CARLOS LEON, *et al.*,

          Defendants.

2:13–cv–1858–APG–VCF

**<u>ORDER</u>**

      This matter involves Plaintiff Lawrence S. Bonner's contract claims against, *inter alia*, Carlos Leon. Before the court are Bonner's motions to extend time for service of process (#16[1]) and motion to serve Defendants by publication (#17). For the reasons discussed below, Bonner's motions are granted.

**BACKGROUND**

      Bonner is a classic-car enthusiast, collector, and restorer. (*See* Compl. (#1-1) at ¶¶ 12–18). Over the course of his career, Bonner has owned more than 150 classic cars and motorcycles, including Steve McQueen's iconic 1971 Husqvarna 400 cross motorcycle, which was featured on the cover of Sports Illustrated in August of 1971. (*Id*. at ¶ 14). Bonner displays his vintage cars at shows throughout California and Nevada. (*Id*. at ¶ 15). To date, cars in his collection have taken six First Place trophies. (*Id*.)

      Bonner also owes a 1964 Chevy Nova station wagon. (*Id*. at ¶ 16). Approximately three years ago, Bonner took the wagon to C&H Soda Blasting for repair and restoration. (*Id*. at ¶ 17). C&H is

---

[1] Parenthetical citation refer to the court's docket.

owned by husband and wife, Carlos and Carmen Leon. (*Id*.) After completing some of the restoration work that the wagon required, the Leons disappeared. (*See* Pl.'s Mot. (#16) at 2). They moved their shop, changed addresses, and absconded with Bonner's wagon. (*Id*.)

Bonner contacted the police; but "they could not help." (*Id*.) Consequently, on August 6, 2013, Bonner filed suit against the Leons, C&H Soda Blasting, and Bonner's insurance companies, which failed to investigate and pay his claim. (*Id*. at 3:8–10). On October, 10, 2013, the insurance Defendants answered and removed Bonner's action to federal court. (*Id*.)

To date, however, Bonner has been unable to serve the Leons or C&H Soda Blasting. (*Id*.) Bonner has remained in telephonic communication with the Leons. (*Id*. at 2). But, they only taunt him. (*Id*.) Every time the Leons call, they say that the car will be finished and returned "in two weeks." (*Id*.) This has been going on for months. The Leons even gave Bonner the address of their "new shop." (*Id*.) Bonner drove to the address only to find an empty lot. (*Id*. at 3).

In an attempt to locate the Leons, Bonner has searched the secretary of state's public records, hired multiple private investigators, and employed two of his own employees to conduct independent research and investigate the Leons current location. (*Id*. at 4). Bonner has discovered that the Leons declared bankruptcy sometime in the last two years, and that they "were fairly recently evicted" from an apartment in Las Vegas, Nevada. (*Id*.)

All of Bonner's attempts to personally serve the Leons, however, have failed. Accordingly, on December 6, 2013, Bonner requested the court to grant him an additional 120 days to serve the Leons and permit him to serve the Leons by publication.

/// /// ///

/// /// ///

/// /// ///

**DISCUSSION**

Bonner's motions raise two questions: (1) whether the court may extend the time to serve the Leons under Federal Rule of Civil Procedure 4(m); and, (2) whether Bonner may serve the Leons by publication under Nevada Rule of Civil Procedure 4(e)(1)(i). Both questions are addressed below.

### A.  *Bonner's Motion to Extend Time is Granted*

Bonner's motion to extend the time to serve the Leons and C&H Soda Blasting is granted. Courts have broad discretion to extend time for service under Rule 4(m). *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2003). The Supreme Court has stated that the 120–day time period for service contained in Rule 4(m) "operates not as an outer limit subject to reduction, but as an irreducible allowance." *Henderson v. United States*, 517 U.S. 654, 661 (1996). "On its face, Rule 4(m) does not tie the hands of the district court after the 120–day period has expired. Rather, Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint after that 120–day period." *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003). The Advisory Committee Notes to Rule 4(m) state that the rule "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown." *See* FED. R. CIV. P. 4(m), Advisory Committee Notes, 1993 Amendments.

Generally, "good cause" is equated with diligence. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1337. In the Ninth Circuit, a showing of good cause requires more than simple inadvertence, mistake of counsel, or ignorance of the rules. *See National Union Fire Ins. Co. v. Monroe*, No. 10–cv–0385, 2011 WL 383807, at *1 (D. Nev. Feb. 2, 2011). "At a minimum, good cause means excusable neglect. A plaintiff may also be required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and

(c) the plaintiff would be severely prejudiced if his complaint were dismissed." *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir.1991).

Bonner has satisfied this standard. Since Bonner initiated this action, he has remained in telephonic contact with the Leons and taken pointless trips, at the Leons' behest, in an attempt to locate them. (*See* Pl.'s Mot. (#16) at 2–3). He has also (1) searched the secretary of state's public records, (2) hired multiple private investigators, and (3) employed two of his own employees to conduct independent research and investigate the Leons current location. (*Id*. at 4). This constitutes "diligence."

### B. *Bonner's Motion to Serve the Leons & C&H Soda Blasting by Publication is Granted*

Bonner's motion to serve the Leons and C&H Soda Blasting by publication is also granted. The Federal Rules of Civil Procedure do not expressly permit service by publication. Rule 4(e)(1), however, permits a plaintiff to serve a defendant "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).

In Nevada, Rule 4 of the Nevada Rules of Civil Procedure governs service of parties under state law. Parties are required to personally serve summons and the complaint upon defendants; however, when personal service proves impossible, Rule 4(e)(1)(i) provides that a party may move for service by publication when the opposing party "resides out of the state, or has departed from the state, or cannot, after due diligence be found within the state, or conceals himself to avoid the service of summons." *Id*.

"A party seeking service by publication must seek leave of court by filing an affidavit demonstrating its due diligence in attempting to personally serve the defendant. There are several key factors Nevada courts look to in evaluating a party's due diligence in effecting service." *Id.* Nevada courts principally consider the number of attempts made by a plaintiff to serve a defendant at his or her residence and other methods of locating defendants, such as consulting public directories and family members. *Id*.; citing *Price v. Dunn*, 106 Nev. 100, 787 P.2d 785, 786–7 (Nev. 1990), *rev'd on other*

4

*grounds*, *NC–DSH, Inc. v. Garner*, 125 Nev. 647, 651 n. 3, 218 P.3d 853 (2009); *Abreu v. Gilmer*, 115 Nev. 308, 985 P.2d 746, 747 (Nev. 1999); *McNair v. Rivera*, 110 Nev. 463, 874 P.2d 1240, 1241 (Nev. 1994).

In *Price*, for instance, the Nevada Supreme Court found service by publication was not warranted, stating "where other reasonable methods exist for locating the whereabouts of a defendant, plaintiff should exercise those methods." 787 P.2d at 786–7. There, the plaintiff contacted the defendant's stepmother, and upon hearing that the defendant lived out of state, moved for service by publication. *Id*. at 105, 787 P.2d 785. The Price court held that, "although [plaintiff's] affidavit technically complies with Rule 4(e)(1)(i), her actual efforts, as a matter of law, fall short of the due diligence requirement to the extent of depriving [defendant] of his fundamental right to due process." *Id*.

In contrast, in *Abreu*, the Nevada Supreme Court determined that the plaintiff exercised due diligence in attempting service because it made three attempts at the defendant's possible address and also consulted telephone company directories. *See* 115 Nev. at 311. The Rosenstein's efforts, so far, fall short of the plaintiff's efforts in *Abreu*.

Here, Bonner met the threshold requirement of submitting an "affidavit." *See* Nev. R. Civ. P. 4(e)(1)(i); (*see also* Pl.'s Mot. (#16) at Ex. A–B). Additionally, Bonner has exceeded the efforts displayed by the plaintiffs in both *Price* and *Abreu.* Bonner has: (1) remained in telephonic contact with the Leons; (2) taken pointless trips, at the Leons' behest; (3) searched the secretary of state's public records; (4) hired multiple private investigators; and (5) employed two of his own employees to conduct independent research and investigate the Leons current location. (*Id*. at 2–4). This is sufficient to permit service of process by publication under Nevada law.

/// /// ///

/// /// ///

/// /// ///

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Plaintiff Lawrence S. Bonner's motion to extend time to serve the Leons and C&H Soda Blasting (#16) is GRANTED. Bonner has an additional 120 days from the date of this order to perfect service.

IT IS FURTHER ORDERED that Plaintiff Lawrence S. Bonner's motion to serve the Leons and C&H Soda Blasting by publication (#17) is also GRANTED.

IT IS SO ORDERED.

DATED this 16th day of December, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE